PRESERVALINE MFG. CO. v. HELLER CHEMICAL CO.

(Circuit Court, N. D. Illinois, N. D.    June 3, 1902.)

No. 26,237.

1. UNFAIR COMPETITION—RIGHT TO RELIEF IN EQUITY—FRAUD OF COMPLAIN-
ANT.

The use by the manufacturer of an article, for several years after a patent therefor had expired, of advertising circulars containing the word "patented," or statements clearly implying that it was protected by a patent, which circulars were inclosed in the packages in which the article was sold, is such a fraud as will preclude relief in equity against unfair competition, although no such statements were made in connection with complainant's trade-mark, or on the packages themselves; it being impossible for the court to determine to what extent the value of complainant's business, which it is asked to protect, is due to such fraudulent action.

In Equity. Suit for infringement of trade-name and for unfair competition. On motion for preliminary injunction.

Moses, Rosenthal & Kennedy, for complainant.
Stein & Platt, for defendant.

KOHLSAAT, District Judge. The bill in this case seeks to restrain defendant from making use, in any manner or form, in connection with the sale of preserving compounds not manufactured by or for complainant, of simulations of complainant's labels, trade-names, trade-marks, and the word "preservative," used in connection therewith; and from sending out trade circulars of the kind in said bill set out; and from making use of any imitations of complainant's labels, trade-names, seals, symbols, letters, words, and designs, or using boxes, etc., calculated to deceive the public into believing that they are dealing with complainant's article of manufacture known to the public as "preservaline." It is apparent from the packages and circulars presented in the case that defendant has substantially appropriated complainant's trade-names, packages, and designs, as well as its trade circulars, and that complainant is entitled, in a proper case, to the relief prayed for in its bill, unless it is barred by its own acts from invoking the aid of a court of equity in the premises. Attached to and made a part of complainant's bill, as Exhibits A, B, C, D, and E, are five of complainant's trade circulars, each one of which sets out that "preservaline" is patented, and clearly implying that the same is protected by letters patent. This is also true of certain other circulars produced on the hearing. It seems that a pat-

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

ent for the composition called "Preservaline" was duly granted by the United States as patent No. 216,414, issued June 10, 1879. This patent expired, by reason of the expiration of a foreign patent, on July 3, 1892. It further appears that complainant used other circulars and advertising media which did not contain any claim that the article was patented. The packages themselves did not bear on their exterior any reference to a patent, but the circulars were inclosed within the packages. Counsel for complainant in their brief admit that "if, after the expiration of a patent, the complainant continues to so arrange his trade-mark as to use the word 'patented' so as to deceive the public into the belief that there is still a subsisting patent, the complainant is without relief"; but insist that the use of the word "patent" or "patentee" "in literature, without the use of the forbidden words in connection with a trade-mark, trade-name, label, or product," will not disentitle complainant to relief in equity. Applying this contention to the case at bar, it would be that because the objectionable words do not appear upon the package itself, but upon literary matter (advertisements and circulars), even though such literary matter is placed within each package, complainant will be entitled to the aid of a court of equity to prevent others from duplicating complainant's actions in the premises, notwithstanding such circulars do serve to deceive the public into the belief that there is still a subsisting patent. It is a well-established rule of law that one invoking the aid of a court of equity must himself be free from fraud and misrepresentation with regard to the matter in which he seeks relief. Therefore, if it appears that complainant in this case, at and preceding the time of the acts sought herein to be enjoined, was itself guilty of a fraud or fraudulent act calculated to impose upon the public in regard to the same transaction, then, no matter how impudent the act of defendant, a court of conscience will not lend itself to complainant's aid in securing to it the exclusive right to deceive the public.

Complainant insists that it has entirely refrained from the use of said circulars and advertising matter since April 11, 1902, except in connection with boxes theretofore packed. This action on complainant's part is of but little importance in arriving at the question here involved, since the value of a trade-name must rest upon the years of usage during which such value has been accumulating. There is nothing in the record to show, and very likely it would be impossible to determine, how far the circulars in question have entered into the creation of the property interest of complainant herein sought to be protected. The court cannot presume it is not a vital element of such property interest, since it has undoubtedly tended to the creation of a monopoly in complainant. For the purposes of this inquiry, the question we must deal with is, substantially, "was the use by complainant upon some of its advertising matter of the term "patented," or its equivalent, after its patent had expired, such a fraud on the part of complainant as to close the doors of a court of equity against it?" If it was not, complainant is clearly entitled to an order restraining defendant in the premises. The case does not come within the statute which provides a penalty for affixing to any

unpatented article the word "patented," for the purpose of deceiving the public, since there is no pretense here that the packages were so marked. Here the fraud, if any, appeared only upon the circulars. In Cheavin v. Walker, 5 Ch. Div. 850, the court say:

"It is a falsehood to represent that the patent is still subsisting. Above the inscription there is a medallion, consisting of the royal arm, surrounded by a circular band or garter, containing the words 'By Her Majesty's Royal Letters Patent.' That appears to me to be a representation that the patent is an existing patent, and on that ground alone I think that plaintiff ought not to succeed in the action."

In Leather Cloth Co. v. American Leather Cloth Co., 11 H. L. Cas. 541–544, the court say:

"If a trade-mark represents an article as patented by a patent, when in fact it is not so protected, it seems to me that such a statement prima facie amounts to a misrepresentation of an important fact, which would disentitle the owner of a trade-mark to relief in a court of equity against one who pirated it."

These authorities are well sustained, and undoubtedly declare the law in such cases.

Complainant cites the case of Cochrane v. MacNish, 13 Rep. Pat. Cas. 100, recently decided by the judicial committee of the privy council, wherein the court construe the words "Manufactured in Ireland by H. M. Royal Letters Patent," placed upon the label containing the trade-mark, as intended to mean "manufactured in Ireland by means of patented machinery." Whatever may be said of the reasoning in that case, it is certain that the language of the present case, and the manner in which it is used, does not admit of any other construction than that the public is given thereby to understand that complainant's article is protected by an existing patent. It therefore remains only to determine whether complainant comes within the rule of courts of equity denying relief. The reason for such rule seems to be that any use of the terms "patent" or "patentee" which will cause the public to believe that a particular article is patented must necessarily have a tendency to deter individuals from the manufacture or handling of such article. The result of this will be to stifle competition, and to extend the monopoly granted by the patent beyond the term of such grant. It is my opinion that the skillful use of these terms upon circulars and advertising matter generally would, as a rule, have a greater tendency to impress the public with such belief than would their use directly upon a package or trade-mark. It is the result, not the manner of accomplishing it, which should be looked to. If complainant had used the word "patented" upon all its printed matter and circulars, therefore, in such a manner as would be calculated to convey the idea that the article "preservaline" was protected by an existing patent, this case would come squarely within the rule above laid down. Does the fact that complainant does so only in connection with a part of such advertising matter change the situation? I do not think this is the law. The use of fraudulent matter in any considerable part of the advertising media tinges the whole with that fraud upon which equity looks with disfavor. The natural effect of the language used upon

the five circulars attached to complainant's bill is to mislead and deceive the public, and complainant cannot be heard to deny the intention of so doing.

The motion for a temporary injunction is denied.